Good morning, your honors. May it please the court. Steve Schreiner on behalf of plaintiff and appellant Marubeni Corporation, LLC. And I'd like to reserve five minutes for the panel, if I could, please. In light of the recent request by the panel for supplemental briefing, I'd like to focus on the question of appellate jurisdiction this morning and particularly the issue of timeliness. In order to find this appeal untimely, this court needs to rule that the district court's August 2nd, 2011 order, excuse me, in and of itself was a final decision with respect to an arbitration made under the Federal Arbitration Act. This obviously is a critical issue in the case. Well, if it isn't a final order, there's another jurisdictional problem. So it's got to be one way or the other, doesn't it? Well, I understand, your honor, and that, of course, is a dilemma that my client and I face. We've confronted previously the issue of prematurity. The issue of timeliness came up for the first time within the last week. None of the parties had previously raised that issue until the request for supplemental briefing. The court hadn't either. And I say that mindful of the fact that this court can and, in fact, must examine subject matter jurisdiction at any stage of the proceedings. So I completely understand the fact that this came up as the case was being readied for oral argument. That being as it may, Marabini has never previously claimed that the district court's August 2 order was a final decision. Well, can I just zero in? Because I did read your briefs last night. And just to focus your argument and get back on track. But both of you take the position there was nothing more for the court to do, which is the standard, because no part of the case remained pending before the court. One of the claims that Medivac made that was compelled arbitration was not decided by the arbitrators because they concluded that they did not have jurisdiction to decide it. Correct. That's correct. OK. And then Marabini therefore moved to remand that claim, which is still pending before the district court. Correct. That, too, is correct. That's still pending. They made the motion to remand. OK. And the district court denied the motion without prejudice because it was filed after we issued our briefing schedule, so the district court said it didn't have jurisdiction. The district court believed it. So that claim is still pending before the district court, correct? I guess it is, Your Honor. I've got to tell you one of the problems with this case is the lack of clarity about exactly what has gone on in the district court, and that's what creates this bilateral dilemma. So why is there not something pending before the district court? Your Honor, I suppose in that sense you could argue that there is, but it's clear that at some point the district court intended or contemplated remanding that case or that claim. OK. And frankly, if that is the court's position, then, and if that is factually supported, and I think it's something that is somewhat vague, but if that's factually supported by the record, then I suppose I would have to concede that this appeal is arguably premature, and this might have to go back down for the district court to finally and with some degree of clarity, and I'll come back to that in a little bit, advise the parties in this court of what the status of the case is there and the things, I mean, obviously the clearest way to do that would be the entry of a dismissal, which is something that Medevos asked for at one point, and it didn't happen. We also asked to have the case certified for an interlocutory appeal after the February 28, 2011 order, and that didn't happen either. But in any event, returning to timeliness, because this to me is the key issue raised by the request for supplemental briefing, Marabini has never contended that the August 2 final order, and it's of the supplemental briefing, obviously, and Marabini has never contended that Medevos' appeal from that order was untimely. In fact, it's quite the opposite. In the initial motion to dismiss this appeal, filed shortly after the notice of appeal,  and the motion to dismiss specifically stated that there has been no final order of the district court in the case from which an appeal has been taken. Marabini took a similar position in the district court. A companion motion to strike the notice of appeal as premature there argued that there has been no final order of this court, that being the district court in this case, or in the companion case. The companion case referred to Marabini's later action to confirm the ultimate arbitration from the ICC. Marabini says, I guess this is Hornbook law, it's a well-established principle that litigants are required to wait until there's a final order in the district court before taking an appeal. So that's Marabini's position. Medevos certainly hasn't contended that the August 2 order was final and appealable, at least at the time that it was issued. In fact, to the contrary, if you look at Medevos' notice of appeal in this matter, it specifically states that the August 2 order constituted an interlocutory order at the time it was issued, and was therefore not appealable at that time. The notice of appeal made it clear that, in Medevos' view, the appeal of the matter became ripe for appeal when two things happened. First, Marabini filed its independent action to confirm the arbitration award, or to enforce the arbitration award, and Marabini did that instead of returning to the district court in the main action, in this action, to confirm the award as they had indicated to the district court that they would do. And if you look, the record citation for that is the district court docket number 26, which is a Marabini file. Was it identified as a related case? It was a new filing. Did it do anything to reference back? Oh, it was absolutely identified as a related case. But it was filed as a new case. And it wound up – it wound up – I'm not sure of this, Your Honor, but I believe it wound up getting low-numbered back to the same district judge that my case, Medevos' case, was before. The second thing that happened that Medevos believes gave the district court order some finality was the ICC's issuance of its final award. Marabini's independent action to confirm and Medevos' counterpetition to vacate the arbitration award was commenced in December of 2011, and the ICC's final award came out in – we received notice of it in February of 2012. So against that backdrop, I want to look at some of the key cases here. Obviously, this all starts with Greentree. The district court in Greentree did three things. It granted a motion to compel arbitration. It denied the defendant's motion for a stay. And it dismissed the plaintiff's claims with prejudice. That dismissal is crucial to this line of cases, and particularly crucial to the Supreme Court's finding in Greentree that there was nothing left for the district court to do but to execute the judgment. The first Ninth Circuit case to apply Greentree was Interactive Flight. Again, the district court dismissed the action, although this time without prejudice, and the fact that the dismissal was without prejudice was found not to be critical because, I'm quoting from the opinion, the district court's order in judgment sufficiently showed that the court intended to close the case. There was a clear intent to end that case at that time, and that would start the appellate clock ticking. The next Ninth Circuit case is Bushley, which the panel asked us to brief, and we did. In that case, the district court ordered arbitration but failed to rule on a couple of motions by the defendant, one motion to stay the proceedings and an alternative motion to dismiss under Rule 12b-6. Because the district court didn't rule on those motions, the Ninth Circuit found that the case was effectively stayed pending completion of the arbitration, and therefore it was not appealable under Section 16a-3. Bees v. Billy is a fairly straightforward case there. The district court actually stayed the proceedings after ordering arbitration and thereby indicated an intention to retain jurisdiction over the case. And the next case in the chain is very interesting. It's Sanford v. Member Works. In that case, the district court compelled arbitration but, again, did not dismiss the claims. Instead, the district court indicated that it would terminate the case in 12 months if arbitration wasn't completed by then. And the district court issued a later clarifying order, making it clear that there was no final order for purposes of the appeal and that it would only entertain, but that it would, notwithstanding the lack of a final order, it would only entertain motions related to the arbitration award. The defendants jumped on that and said, hey, there are no live claims remaining before the court, and the appeal, that started the clock running, and the appeal was therefore untimely. The Ninth Circuit rejected that argument, again, because the plaintiff's claims had not been dismissed. They were deemed to remain before the district court. And then, finally, we come to Comedy Club, which is another case that the panel asked us to provide supplemental briefing on. It's another case, again, where the district court ordered the parties to arbitrate and then dismissed the plaintiff's claims, and that dismissal started the clock running on the appeal. The plaintiff didn't file the appeal within 120 days, and the notice of appeal was therefore untimely under Federal Rule of Procedure 4. Comedy Club is consistent with the other dismissal cases, Green Tree and Interactive Flight, and it's distinguishable from the non-dismissal cases that I've just talked about, Bush-Lee, Dees v. Billy, and the Sanford v. Member Works case. In this case ---- But doesn't it push you to a different problem, which is that if we accept your proposition that this fits the dismissal pattern, because there's nothing left for the district court to do, then the clock starts ticking. You argue the clock starts ticking not based on anything the district court does, but by some outside event. How can that be? Well, as a litigant, that's the dilemma. Well, I understand the practical problem. I mean, I used to practice law. Right. But we look at things that happen in the courthouse, not at something that may happen out here. And so the fact that you may become concerned at a given point in time, I'm not sure how that speaks to when the clock starts ticking. It seems to me the clock would start ticking when the district court said the last thing, after which nobody expected anything more to happen at the district court. Okay. And so let me work off that premise that I've obviously tried to carve out a ---- Well, I say that because it seems to me the more you tell us that it's done in the district court, the more you're pushing yourself between the hard places. Understood. Understood. And in part, this was brought on by a response to the prematurity argument. It may be that the 13-line motion was more prescient than we gave it credit for. To return to whether the August 2, 2011 order started the clock ticking, I think clearly it didn't. There was, as Judge Fischer has pointed out, there's another claim floating around out there. All of which seems to support the argument it's not final. I mean, it seems to me it can only be one or the other. Either it's final and the clock starts ticking or it's not. And the suggestion, well, it's not final then but becomes final because of something that happens in the arbitration, I just ---- I can't connect those dots. I understand, Your Honor. I'm reading the cases, reading them over the weekend, the last couple days, again last night. I understand the Court's position. So aren't you really trying to argue that it's not final? I will. If I can't have my cake and eat it too, I will certainly prefer to have the appeal found to be premature, which in light of the unremanded cause of action may be correct, rather than untimely. With that, unless the Court has more questions, I'll sit down because I'm into my yellow zone already. Fair enough. Good morning, Your Honors. Jeff Davis on behalf of Marabeni Corporation. So what's your take on this? And will it change over the next ten minutes? It may well. And I reserve that right to you. Let me start with the question that was posed, which is, well, what about the cause of action, fraudulent transfer that wasn't decided by the arbitration panel? How does that change things or how does that affect things? My response would be this. There was clear intent by the district court that its order on August 2nd be a final order. There was nothing left there. The parties treated it as final. Nobody filed additional motions. For all intents and purposes, it was as if there was a dismissal order entered. There wasn't one. It was as if there was. And then this comes along six months later. If there was a dismissal order, then why would the motion come back to the district court? Your Honor, I would liken it to a motion to reopen the case, that reopen the case to allow this later determination to be made. Just because as an outside event. It wasn't. It was a motion to remand, wasn't it? There was a motion to remand, absolutely, because the case was not closed administratively. It was still out there. Oh, okay. Which is part of the problem, that it wasn't closed administratively, and so it was still out there. What do you do with this? You don't file an independent action. A motion to reopen would have been rejected by the clerk. Well, you moved to reopen if you thought everybody, as you're saying, treated it as a closed case. That's nice to say here as we sit here today. Let's try to get that past the clerk's office and the district court. Okay, I understand the dilemma, but as Judge Clipton said, we have to deal with what the court does or doesn't do. Sure, but also the court really has to deal with reality, and lawyers have to operate within the real realm and say, well, in this case, we'll file a motion to reopen and try to convince the clerk that it is really a motion to reopen. That's not going to happen. So what we have here is an outside event that has nothing to do with the court causing a case to be reopened. That doesn't affect the finality of the original ruling. If it did, there would be no such thing as a final ruling, because there's always a possibility that some extrinsic event could cue an attempt to reopen the case. You're certainly right if the case is not actually reopened, but what if it is? And that's, I mean, that's sort of the district. We don't have a statement on that, but it's at least a live possibility, because this, the motion, the request to reopen the case, the motion to reopen that wasn't filed, is based on an outside event that the parties understand and say, hey, there's a piece that's left over someplace. Now, the district court doesn't rule on that, because it thinks the case is here, for reasons that we all understand. But we now have more than just the hypothetical possibility the case gets reopened. We have a claim that everyone appears to acknowledge wasn't taken care of by the arbitration and needs to be resolved, in theory at least, needs to be resolved someplace. And so, okay, if the case does get reopened by the district court, suddenly, do you have an appeal, and finally gets resolved in some fashion, is it that point that gives the final judgment that permits the subsequent appeal? It's, I'm kind of dancing on the head of a pin here, but what's the practical solution to this problem? Well, we're all dancing on the head of a pin. We're all trying to figure it out, because it isn't a perfect world. We're back in civil procedure and trying to answer that exam. Well, Your Honor, this is what I would suggest. This is what I would say, is that, you know, if you take the position that you do, that, okay, we're going to send this back to the district court because it's premature. And, you know, I believe, as Mr. Shriner believes, that the district court is going to say, that gets sent to the state court. I don't have jurisdiction. So, and then we're back here again, and now we're two years down the road between the time. The illogic of this is very clear to everybody. But we have rules because, for the most part, it helps organize our work. And so I'd be real happy to find a key out of this lock, because otherwise you're right. We're going to have several months and more paper and a lot of unproductive activity. But I sit here looking at something that is either, it seems to me, either not final or final. And I'm not sure that we have the ability to do it right now.     It's going to be fairly simple. And as you've suggested, untimely, because the clock started ticking soon enough that the hundred – 180 days has gone by. But the issues wind up getting revisited after a fashion on the motion to confirm. And so it's not like we can bring peace to the parties or end the dispute. I'm just not sure that we have the ability to do it right now. I think you do have the ability to do it right now. And I think it works out in this fashion. And that is that the August 2nd ruling was a final ruling. It should have been appealed within the 30-day period. It was not. So then the arbitration panel, six months later, comes back and says, we're not going to decide one of these issues. We should treat that as a motion to reopen the case for the sole purpose of determining that issue as to what happens with that fourth cause of action, the cause of action that was sent back by the arbitration panel. Does it stay in the district court or does it get remanded? And then that will be a final decision as to that cause of action. I think that's the proper procedural approach here, that, yes, there was a final decision. As of August 2nd, appeal period ran, no appeal, motion to reopen, or the motion that was filed to be treated as a motion to reopen. And the district court now, since this appeal will be dismissed as untimely, the district court now has jurisdiction to determine whether it should move forward with the motion to reopen or not. I think that's really the only way of dealing with what we have here, because there's no doubt that as of 30 days after August 2nd, there should have been an appeal of the August 2nd ruling, if that was going to be appealed. As of that time, that was a final determination in an arbitration proceeding, and the time should run from then. To allow a later event. Didn't you move, didn't you argue previously that the appeal that was subsequently brought was premature? I'm not saying that's right or wrong, but it's one of the problems is there's not an articulated closing of the case. It's guesswork. It's trying to figure out. So you say it should have been appealed within 30 days, but there was a time when you thought it could never have been appealed because it wasn't final enough. I'm stuck with the position of my prior counsel. I understand. But if you look at the motion to dismiss, it talks about it's premature because the final award in the arbitration proceeding has not yet been confirmed. Clearly, the author of that motion to dismiss was thinking, well, this August 2nd ruling is well behind us. Now they're trying to file some appeal, and it must be, what's this appeal all about? This appeal must be about the fact that a week earlier the final award had been issued. And that's the way I read that motion to dismiss, is saying not that it was premature as to what was decided on August 2nd, but it was premature because the view was that what was being appealed was a confirmation or an awarding of a judgment by the district court based upon the arbitration award, and this is just merely saying it has not been entered. If it was anything more, I doubt it would have been only 13 lines with no authority. This was clearly just a, hey, you're too early type of situation. And it was viewed, you know, the way I view it from reading it is that this contemplated what was being appealed here. And so I think that's the issue there. I'm not more, I'm not sure if I have anything else to say. Well, actually, if I do, one more thing, sorry. And that is that clearly the reason given by, and I always screw up the names, Medivac, I always screw up Medivac, both start with an M. The reason Medivac gives for starting the appeal period when it did, that there was an award, a final award from the arbitration panel, clearly is not what is meant by the final determination as to an arbitration matter under the FAA. I know we're all trying to search for answers here and ways to deal with the circumstances, but that clearly is not the way. There was no such thing as an appeal becomes ripe based upon a final award being entered. And I think that's all that the motion to dismiss that was filed earlier was really trying to say, is that you can't use the award in the arbitration proceeding as a final determination in arbitration. Wasn't there a motion or an action to confirm file after that? There was as an independent action. Actually, it was filed. That might have been premature. It was filed in December prior to the final award being issued in January. And it was a separate action. But at least that was willing to take the arbitration award as being something you could go to court with. We certainly could go to court with it. The question is, could you appeal the award, the judgment that would be entered on that award? And I think the mistake here was in this motion to dismiss was thinking that Medevas was seeking to attack the confirmation of the award as a judgment when that had not yet occurred, even though it had been filed at that point. Okay. Remodel. It's very good of you, Your Honor. Nobody treated that August 2nd order as a final decision. And Marabini didn't even begin to argue that until the court requested the supplemental briefing. The argument that we should treat the remand motion filed well after, and, in fact, that's consistent with the idea of this remand motion being filed well after this notice of appeal, demonstrates that Marabini still thought that the district court had something going on. And treating that remand motion as something it isn't, a motion to reopen, is illogical, and if it's pursued to its conclusion, extremely unfair to Medevas. With respect to the motion to dismiss and the basis of the 13-line motion to dismiss, it's interesting to note that although Medevas briefed that motion fairly extensively for the motion panel of this court, Marabini did not brief the motion and did not withdraw the motion. In fact, to the contrary, Marabini pursued a companion motion or a parallel motion in the district court. So finally, the court asked about a practical solution. I know I'm out of time, but if you look at the Capgemini case, which is a case from another circuit that is cited in my supplemental brief, you'll see that the most practical approach here might be simply to send this back to the district court to request clarification of what the August 2 order is intended to do or what the current status of the case is. Thank you. Thank you. We thank both counsel for your help.
judges: Goodwin, Fisher, Clifton